## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01917-RMR-SBP

GLORIA WERTZ,

      Plaintiff,

v.

CLOROX SERVICES COMPANY,

      Defendant.

---

## RECOMMENDATION ON DEFENDANT'S PARTIAL MOTION TO DISMISS

**Susan Prose, United States Magistrate Judge**

      This matter is before this court on the motion of Defendant Clorox Services Company ("Clorox" or "Defendant") to dismiss Plaintiff Gloria Wertz's claim for relief under the Colorado Consumer Protection Act (the "CCPA," Colo. Rev. Stat. § 6-1-101 *et seq.*). ECF No. 11 (the "Motion" or "Motion to Dismiss"). The Motion is referred to this court. ECF No. 12. Plaintiff opposes the Motion. ECF No. 20. ("Resp."). Clorox replied. ECF No. 26 ("Reply"). This court heard oral argument. ECF No. 27 (minutes of October 4, 2024). Having reviewed the Complaint, the briefs, and the audiorecording of the oral argument, this court respectfully **RECOMMENDS** that the Motion be **granted** and the CCPA claim be **dismissed without prejudice**.

*I.*     *Background*

      Plaintiff originally filed this action in the state District Court for the City and County of Denver on April 5, 2024. ECF No. 4 ("Complt."). Clorox removed the case to this court on diversity jurisdiction. ECF No. 1 (notice of removal filed on July 11, 2024). In her Complaint,

Plaintiff alleges that on October 4, 2021, she purchased one of Clorox's products, namely "Pine-Sol Lavend[e]r, a multi-surface cleaner." Complt. ¶¶ 5-6 (the "Product"). She "began using the Product around December/January of 2021/2022. Around February 2022, Plaintiff began experiencing unusual symptoms, including but limited to: shortness of breath, extreme fatigue, continuous productive cough, and leg swelling. In March 2022, Plaintiff presented to the doctor and was diagnosed with pneumonia. In April of 2022, her treating pulmonologist determined that *Pseudomonas aeruginosa* was the cause of her pneumonia." *Id*. ¶¶ 11-14.

Unbeknownst to Plaintiff at the time, the Product "contained *Pseudomonas aeruginosa*, [a species of bacteria] which causes infections in the blood and lungs. It is transmitted through the inhalation or skin ingestion of the [P]roduct." *Id*. ¶ 9. In support of that allegation, Plaintiff's Complaint cites to a government agency website publicizing Clorox's recall of the Product: https://www.cpsc.gov/Recalls/2023/Clorox-Recalls-Pine-Sol-Scented-Multi-Surface-Cleaners-CloroxPro-Pine-Sol-All-Purpose-Cleaners-and-Clorox-ProfessionalTM-Pine-Sol-Lemon-Fresh-Cleaners-Due-to-Risk-of-Exposureto-Bacteria-1. *Id* at 2 n.4. The Complaint also cites to https://www.thecloroxcompany.com/brands/cleaning-and-homecare/; https://www.pinesol.com/products/lavender-clean-cleaner/; and https://pinesolrecall.com/.

Plaintiff further alleges that "[t]he only exposure Plaintiff had to *Pseudomonas aeruginosa* was from the Product. Over the following nine months, prior to the recall, Plaintiff continued to use the Product, in an effort to keep her home clean and prevent others entering her home from becoming sick. Due to the continued use of the Product, Plaintiff recurrently became sick with pneumonia. Plaintiff was unaware the Product was the cause of her recurrent pneumonia." Complt. ¶¶ 15-18.

Plaintiff alleges that she "purchased the Product to keep her home clean and free of bacteria and other infectants. In May 2022, Plaintiff was diagnosed with Bronchiectasis, a progressive condition which affects the lungs." *Id*. ¶¶ 19-20.

"On October 25, 2022, Defendant recalled many of its Pine-Sol products, including the Pine-Sol Lavend[e]r purchased by the Plaintiff, due to reports of purchasers becoming ill from the *Pseudomonas aeruginosa*." *Id*. ¶ 21 (footnote omitted, citing the cpsc.gov webpage).

Plaintiff alleges permanent lung damage from the exposure to the bacteria in the Product that she "has been advised . . . may require a lung transplant." *Id*. ¶¶ 25-27. She further alleges that Clorox "*knew or should* have known that the *Pseudomonas aeruginosa* was in its Products." *Id*. ¶ 29. Based on the foregoing facts and additional facts alleged in the claims, Plaintiff brings claims for (1) product liability based on negligence, (2) strict product liability, and (3) violations of the CCPA. Because Clorox does not move to dismiss either of the product liability claims, this court does not focus on those allegations.

In support of her CCPA claim, Plaintiff contends that Clorox "engaged in unfair and deceptive trade practices by, *inter alia*, manufacturing and distributing a product that was falsely labeled and marketed" in four ways. *Id*. ¶ 60. **First**, Plaintiff alleges that Clorox falsely labeled and marketed the Product "to kill harmful bacteria, when, in fact, the Product that Plaintiff bought actually contained the harmful bacteria, *Pseudomonas aeruginosa*." *Id*. **Second**, she alleges that Clorox "either knowingly or recklessly made false claims and statements about the Product's contents and abilities[,] namely, Defendant claimed that . . . [t]he Product was safe to use on surfaces in the home." *Id*. ¶ 61(a). Directly following that allegation, Plaintiff inserts what appears to be an image from a webpage (apparently of Clorox, but no URL address or date is

included), setting out statements: "SAFE ON YOUR SURFACES*," "You can use Pine-Sol(R) cleaners on hard, nonporous surfaces, including floors, sinks, counters, stoves, bathtubs, shower stalls, tile and more!" *Id*. The remainder of the image contains "DIRECTIONS FOR USE" in "General Cleaning and Deodorizing" and in "Toilet Bowls." *Id*. This image does not mention the use of any Pine-Sol cleaners for disinfecting.

**Third**, Plaintiff alleges that Clorox also falsely claimed "[t]hat the Product was a 'Versatile and Economic Cleaner' meant to disinfect home surfaces," *id*. ¶ 61(b), and **fourth**, she alleges Clorox claimed "[t]hat the Product did not contain *Pseudonomas aeruginosa*." *Id*. ¶ 61(c). Following this allegation is an image from a product label for "CloroxProTM Pine-SolTM All Purpose Cleaner Lavender Clean." The label says that this product is a "Versatile and Economical Cleaner" to "[u]se . . . to clean and deodorize hard, nonporous surfaces." The image does include any version of the word "disinfect." Nor does this image refer to killing bacteria or germs.

Plaintiff further alleges that

the Product *did* contain *Pseudomonas aeruginosa* and was neither "Safe" nor useful as a cleaning agent. Instead, the Product was dangerous and injurious to Plaintiff. * * * Had Defendant been transparent about the contents of the Product, Plaintiff would not have purchased the Product and would not have been injured as detailed above. Had Defendant not misrepresented the qualities and abilities of the Product, Plaintiff would not have purchased the Product and would not have been injured as detailed above.

Complt. ¶¶ 62-65 (emphasis in original). Plaintiff seeks her attorney's fees and treble damages. *Id*. ¶ 66 (citing Colo. Rev. Stat. § 6-1-113).

Clorox moves to dismiss the CCPA claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. This court addresses the parties' specific arguments below.

II.    *Legal Standards*

    A.    *Rule 12(b)(6) Plausibility Standard*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (citation omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted). "Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still must nudge the claim across the line from conceivable or speculative to plausible." *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quotation omitted). Yet "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. at 1264; *see also Twombly*, 550 U.S. at 556 (same).

    B.    *Rule 9(b) Pleading Fraud with Particularity Standard*

Clorox argues that because Plaintiff brings a CCPA claim sounding in fraud, Rule 9's pleading "with particularity" standard applies. Motion at 5 (citing *Duran v. Clover Clubs Food*

*Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985)). In her Response, Plaintiff does not directly address this issue, but in the hearing, she argued that she has already pleaded facts that meet the heightened pleading requirement.

"The heightened pleading standard under Federal Rule of Civil Procedure 9(b) may apply to [a CCPA claim] because it alleges fraud, but there is some question whether it applies to an alleged CCPA violation." *Roland v. Letgo, Inc.*, No. 22-1456, 2024 WL 372218, at *6 (10th Cir. Feb. 1, 2024) (citing *State ex rel. Suthers v. Mandatory Poster Agency, Inc.*, 260 P.3d 9, 13 (Colo. App. 2009)).[1] Both before and after *Roland*, judges in this District consistently applied Rule 9(b) to CCPA claims that attempt to allege knowing or reckless false statements. *See, e.g.*, *Roland*, 2024 WL 372218, at *6 (noting that the court and the parties below assumed Rule 9(b) applied to the CCPA claim in that case); *Goode v. Ramsaur*, No. 20-cv-00947-DDD-KAS, 2024 WL 3849756, at *12 (D. Colo. Aug. 16, 2024), *report and recommendation adopted*, 2024 WL 4591414 (D. Colo. Sept. 3, 2024) (applying Rule 9(b) to CCPA claim); *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120-21 (D. Colo. 2011) ("In addition, a plaintiff must meet the heightened pleading requirements pursuant to Rule 9(b) to prove a deceptive or unfair trade practice.") (citing *Hansen v. Auto-Owners Ins. Co.*, No. 09-cv-02736-CMA-BNB, 2010 WL 749820, at *2 (D. Colo. Mar. 4, 2010); *Duran*, 616 F. Supp. at 793).[2]

---

[1] In *Mandatory Poster*, the Colorado Court of Appeals found that it did not need to decide "whether complaints alleging a CCPA violation require pleading with particularity under Rule 9(b)" because the complaint in that matter "satisfied the rule's more stringent pleading requirements." *See* 260 P.3d at 13.

[2] Applying Rule 9(b) to a CCPA claim that sounds in fraud is also consistent with the Tenth Circuit's application of Rule 9(b) to federal statutes that sound in fraud. *See, e.g.*, *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992) ("Under Rule 9(b), plaintiffs must sufficiently allege each element of a RICO [Racketeer Influenced and Corrupt Organizations

Accordingly, consistent with this District's longstanding precedent, this court applies the Rule

9(b) pleading standard to the deceptive trade practice element of Plaintiff's claim under the

CCPA.

The Tenth Circuit has recognized that "Rule 9(b) does not require omniscience; rather the

Rule requires that the circumstances of the fraud be pled with enough specificity to put

defendants on notice as to the nature of the claim." *United States ex rel. Polukoff v. St. Mark's

Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018). *See also Lamothe v. Decentral Life, Inc*., No. 23-cv-

03251-RMR-STV, 2024 WL 5055576, at *3 (D. Colo. Oct. 24, 2024), *report and

recommendation adopted*, 2024 WL 5055579 (D. Colo. Nov. 12, 2024) (quoting *Polukoff*). But

the Rule does require "the pleader to allege the who, what, when, where, and how of the alleged

fraud—in other words, the time, place, and contents of the of the false representation, the identity

of the party making the false statements and the consequences thereof." *Tara Woods Ltd. P'ship

v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010) (quotation omitted), *aff'd*, 566 F.

App'x 681 (10th Cir. 2014).

  C. *Materials the Court Can Consider on a Rule 12(b)(6) Motion*

"Importantly, in assessing whether a plaintiff has stated a claim for relief, a court must

restrict its review to only the 'allegations within the four corners of the complaint,' and cannot

consider other pleadings or external allegations." *Brown*, 124 F.4th at 1263 (quoting *Waller v.

---

Act, 18 U.S.C. § 1961 *et seq*.] violation and its predicate acts of racketeering with particularity, a
requirement justified by the 'threat of treble damages and injury to reputation.'"). Like the
federal RICO Act, the CCPA provides for treble damages—in private, non-class actions like this
case—"if it is established by clear and convincing evidence that such person engaged in bad faith
conduct." Colo. Rev. Stat. § 6-1-113(2)(a)(III).

*City & Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019)). Thus, the usual rule in deciding a Rule 12(b)(6) motion to dismiss is "that a court should consider no evidence beyond the pleadings." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *see also Dobson v. Anderson*, 319 F. App'x 698, 702 (10th Cir. 2008) ("[W]hen parties submit materials outside of the pleadings in support of or in opposition to a Rule 12(b)(6) motion, a court has broad discretion whether to accept and consider them"). If a district court "relies on material from outside the pleadings" at the Rule 12(b)(6) stage, the court must convert "the motion to dismiss into a motion for summary judgment." *Price v. Philpot*, 420 F.3d 1158, 1167 (10th Cir. 2005); *see also* Fed. R. Civ. P. 12(d).

However, there are limited exceptions that permit a court to consider materials beyond the pleadings without converting a motion to dismiss to a motion for summary judgment, which include:

> (1) documents that the complaint incorporates by reference . . . (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity . . . and (3) matters of which a court may take judicial notice.

*Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (internal quotation marks omitted, citing *inter alia Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)); *see also Brown*, 124 F.4th at 1264 (recognizing the same three exceptions, citing *Gee*); Fed. R. Evid. 201(b) (defining the types of facts that may be judicially noticed).

The court may take judicial notice of undisputed court documents and matters of public record without requiring conversion of a motion to dismiss to a motion for summary judgment.

*See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *see also Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1219 n.2 (10th Cir. 2011) (recognizing that "undisputed court documents and matters of public record" are proper subjects for judicial notice because they are facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned") (citation omitted). When a court takes judicial notice of documents, however, the court may consider those documents only to show their contents and not to prove the truth of matters asserted therein. *Tal*, 453 F.3d at 1264 n.24.

In this case, Clorox attaches five exhibits to its Motion:

**Exhibit A**, a printout of https://www.thecloroxcompany.com/brands/cleaning-and-homecare/; Plaintiff references this Web address in footnote one of the Complaint;

**Exhibit B**, a printout of https://www.pinesol.com/products/lavender-clean-cleaner/; Plaintiff references this Web address in footnote two of the Complaint;

**Exhibit C**, a printout of https://www.cpsc.gov/Recalls/2023/Clorox-Recalls-Pine-Sol-Scented-Multi-Surface- Cleaners-CloroxPro-Pine-Sol-All-Purpose-Cleaners-and-Clorox-ProfessionalTM-Pine-Sol-Lemon-Fresh-Cleaners-Due-to-Risk-of-Exposure-to-Bacteria-1), a webpage of the United States Consumer Product Safety Commission; Plaintiff references this Web address in footnotes 4, 5, and 6 of the Complaint (this court will refer to this webpage as the "Recall Webpage");

**Exhibit D**, a printout of another Pine-Sol webpage, entitled "FAQ About Pine-Sol® Ingredients and Disinfectant | Pine-Sol® (pinesol.com)"; Plaintiff does *not* reference this Web address in the Complaint; and

**Exhibit E,** a "contract proof" for a product label that Clorox asserts is the correct label for the Product that Plaintiff alleges she purchased (as opposed to the product label for "*CloroxPro* Pine-Sol Lavender Clean" that she includes in the Complaint at Paragraph 61(c)).

None of Clorox's exhibits reflect a download date except Exhibit C. *See* ECF No. 11-1 (Clorox's appendix of exhibits) at 24-30. Exhibit E also reflects a most recent "release date" of February 4, 2020. *Id*. at 39 (*see* table at bottom left, entitled "ELECTRO").

Plaintiff attaches to her Response what appears to be the identical Recall Webpage, except for the download date. ECF No. 20-1. Plaintiff also includes in her Response an undated image excerpted from Clorox's Exhibit A (Resp. at 6) and images of certain Google search results. *Id*. at 7 n.7 (stating that counsel ran the searches using a Chrome browser on August 29, 2024, from Englewood, Colorado). In rebutting Plaintiff's argument, Clorox includes another copy of those Google search results in its reply. Reply at 7.

This court indicated to counsel during the oral argument that it had significant concerns about taking judicial notice of Defendant's webpages and product labels on a Rule 12(b)(6) motion. For the following reasons, the court now concludes that it can only consider **Exhibit C** without recommending that the Motion be converted to a motion for summary judgment.

First, as to Defendant's printouts of its webpages whose addresses Plaintiff references in the Complaint—i.e., Exhibits A and B—Clorox argues that the court can and should consider these webpages as documents referenced in and central to the Complaint. Motion at 5-6 (citing *Alvarado*, 493 F.3d at 1215; *Jacobsen*, 287 F.3d at 941; *Ueding v. Border*, No. 18-cv-00778-KLM, 2019 WL 1077367, at *1 n.4 (D. Colo. 2019); and *GFF Corp. v. Associated Wholesale Grocers, Inc*., 130 F.3d 1381, 1385 (10th Cir. 1997)). But none of those cases concern non-

governmental webpages. Webpages are living documents whose contents often change over time, despite their web addresses remaining the same. Here, while the Complaint does not specify dates for the referenced webpages, the court must accord all reasonable inferences in favor of Plaintiff's allegations on a Rule 12(b)(6) motion. *Brown*, 124 F.4th at 1263. Since Plaintiff relies on these webpages to support her CCPA claim, it is reasonable to infer that she refers to them as they existed when she bought and used the Product. According to Plaintiff's allegations, that time period began in October 2021 and ended in November 2022.

By the time Clorox filed the Motion to Dismiss in July 2024, well over a year and a half had passed since Plaintiff discontinued use of the Product. Presumably, Clorox downloaded these webpages shortly before it filed the Motion. Yet Clorox did not file a declaration or affidavit (or even assert in its briefs) when it actually downloaded the webpages, or more importantly, whether Exhibits A and B contain the same content as they did when Plaintiff purchased and used the Product. During oral argument, Defendant's counsel could only say that he understood Defendant's webpages have never said that the lavender scented Pine-Sol is a disinfectant. But (a) Plaintiff does not rely solely on the text of the webpages; she also relies on the relationship between an image and the text that follows it; and (b) at least one image on the webpages had already changed by the time the court navigated to it during the oral argument. Because it is unclear whether Exhibits A and B reflect the webpages as they were at the time Plaintiff bought or used the Product, the court cannot consider them as documents referenced in the Complaint.

Thus, judicial notice is the only potential avenue for the court to consider Exhibits A and B—and also Exhibit D, a Pine-Sol webpage that is not referenced in the Complaint. As this court has noted elsewhere, "[w]hether a court may take judicial notice of materials outside of the

pleadings from a private entity's (i.e., non-governmental) website . . . requires careful analysis."
*Gutman v. PointsBet USA Inc.*, No. 22-cv-02137-SKC-SBP, 2024 WL 2106517, at *7 (D. Colo.
Apr. 18, 2024), *recommendation adopted in relevant part*, No. 22-cv-02137-SKC-SBP, ECF No.
74 (D. Colo. Aug. 21, 2024). While the Tenth Circuit Court of Appeals has permitted judicial
notice of images of website materials from "source[s] whose accuracy cannot reasonably be
questioned," *Pahls v. Thomas*, 718 F.3d 1210, 1216 n.1 (10th Cir. 2013) (taking judicial notice
of a Google map and satellite image), the Court has generally taken a cautious approach in
approving judicial notice of the websites of private entities. In *MusclePharm Corp. v. Liberty
Ins. Underwriters, Inc.*, 712 F. App'x 745 (10th Cir. 2017), the Court declined to take judicial
notice of an "undated and unauthenticated" document from a non-governmental website because
it did "not satisfy the basic requirements for judicial notice."[3] *Id.* at 758. The Tenth Circuit
further noted that "other circuits have cautioned courts from 'finding judicially noticeable facts
amongst . . . private corporate websites,' which is where this online [document] was found." *Id.*
(citing *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007)). In accordance with this
precedent, this court has declined elsewhere to take judicial notice of a non-governmental
litigant's webpage which did not appear to be publicly available at the relevant point in time and
where the defendants sought to use the webpage to establish the truth of its contents. *See
Gutman*, 2024 WL 2106517, at *8. Other judges in this District have taken a similar approach.[4]

---

[3] "Unpublished opinions are not precedential, but may be cited for their persuasive value." 10th
Cir. R. 32.1(A). "[I]f an unpublished opinion or order and judgment has persuasive value with
respect to a material issue in a case and would assist the court in its disposition, [the Tenth
Circuit] allow[s] citation to that decision." *United States v. Austin*, 426 F.3d 1266, 1274 (10th
Cir. 2005).

[4] *See, e.g.*, *PS Audio, Inc. v. Allen*, No. 18-cv-00206-WJM-STV, 2018 WL 5309834, at *4 n.5

Here, Exhibits A, B, and D are non-governmental webpages that are undated—even as to their download dates, let alone the dates that they were active on Defendant's websites. As noted above, Clorox has not provided a declaration to confirm whether these exhibits reflect the contents of these webpages during the time period that Plaintiff purchased or used the Product. In these circumstances, this court declines to take judicial notice of these undated, non-governmental webpages and therefore does not consider Exhibits A, B, or D in evaluating the Motion. The same analysis applies to the excerpt of Exhibit A in the Response.

As for Exhibit E—which Clorox asserts is the correct Product label—Plaintiff alleges facts concerning the label on the Product, but she does not refer to this specific document in the Complaint. Plaintiff also has not affirmatively conceded that Clorox's Exhibit E sets forth the actual Product label that was on the bottle of lavender-scented Pine-Sol that she purchased. Nor did Clorox provide a declaration or affidavit attesting that Exhibit E is an authentic copy of the label as it existed when Plaintiff purchased or used the Product. In these circumstances, this court will not take judicial notice of Exhibit E.

---

(D. Colo. Aug. 10, 2018) (on a motion for default judgment, declining to take judicial notice of a non-governmental website where the plaintiff did not "include any information or allegations" related to the website in its complaint); *Hampton v. Root9b Techs., Inc.*, No. 15-cv-02152-MSK-MEH, 2016 WL 7868823, at *4 n.7 (D. Colo. Aug. 3, 2016), *report and recommendation adopted*, 2016 WL 9735744 (D. Colo. Sept. 21, 2016) (finding a "printed copy of a page on a website" was not a proper subject for judicial notice where the defendants offered it to show the "truth of its contents"), *aff'd*, 897 F.3d 1291 (10th Cir. 2018); *see also Burba v. United States*, No. 19-cv-00155-CMA-SKC, 2020 WL 6108706, at *3 n.4 (D. Colo. Jul. 21, 2020), *report and recommendation adopted*, 2020 WL 5269838 (D. Colo. Sept. 4, 2020) (declining to judicially notice private website citations in the footnotes of a defendant's reply brief because "without more information about the source of the information," it was not clear that judicial notice was appropriate).

Nor will the court take judicial notice of the Google search results that Plaintiff includes in her Response (and that Clorox also includes in the Reply). Although Plaintiff provides the date, place, browser, and search terms that counsel used in those searches, the Complaint does not allege or reference any of these facts. Neither does Plaintiff explain why or how the court could consider the search results as statements or claims of Clorox or as facts otherwise supporting an element of her CCPA claim. Plaintiff argues that Clorox has not "made efforts to cure [the] public misconception" that she believes is reflected in the Google search results. Resp. at 7-8. But Plaintiff does not allege that Clorox was aware of that public misconception until Plaintiff included these search results in her Response. Accordingly, this court does not consider Plaintiff's Google search results.

This leaves Clorox's Exhibit C (duplicated at Plaintiff's Exhibit 1, ECF No. 20-1): the Recall Webpage. As noted, the Complaint references this publicly-accessible webpage from a federal government website. The parties do not dispute its authenticity. The court accordingly takes judicial notice of the Recall Webpage.[5]

Both sides devote much of their briefs to their respective views on Clorox's exhibits.

---

[5] Defendant does not appear to rely on the Recall Webpage to contradict the allegations in the Complaint, but it does assume that all of its exhibits control over the allegations. *See, e.g.*, Motion at 8 (arguing that its webpage exhibits "disprove" Plaintiff's allegations); Reply at 6 (quoting *Jacobsen*, 287 F.3d at 941). "[I]f there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls. . . . [if it is] *a document that qualifies as a 'written instrument,'* which is a legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." *Mundt v. Gadziala*, No. 24-1041, 2024 WL 5087212, *5 (10th Cir. Dec. 12, 2024) (cleaned up, emphasis added). Exhibit C is not a written instrument, so this court cannot rely on it to contradict the Complaint on a Rule 12(b)(6) motion.

Throughout the remainder of this Recommendation, this court has carefully limited its review exclusively to the arguments concerning the Recall Webpage and the well-pleaded factual allegations in the Complaint.

III.    Analysis

"The CCPA is a remedial statute intended to deter and punish deceptive trade practices committed by businesses in dealing with the public." *State ex rel. Coffman v. Castle Law Grp., LLC*, 375 P.3d 128, 134 (Colo. 2016) (citing *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 50-51 (Colo. 2001)). Courts recognize that the CCPA "should be liberally construed to serve its broad purpose and scope." *HealthONE*, 805 F. Supp. 2d at 1120 (citing *Hall v. Walter*, 969 P.2d 224, 230 (Colo. 1998)).

Under the CCPA, "[a] person engages in a deceptive trade practice when, in the course of the person's business the person knowingly or recklessly makes a false representation as to the characteristics, ingredients, uses, [or] benefits of goods[.]" Colo. Rev. Stat. § 6-1-105(1)(e) (in relevant part, cleaned up). To successfully press a private cause of action under this statute, a plaintiff must show:

> (1) the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered the injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*HealthONE*, 805 F. Supp. 2d at 1120 (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 146-47 (Colo. 2003)). *See also Hall*, 969 P.2d at 235 (same). "All elements of a CCPA claim must be met; otherwise, the claim fails as a matter of law."

*HealthONE*, 805 F. Supp. 2d at 1120.

Here, Clorox argues that Plaintiff fails to plausibly allege the first and third elements of a CCPA claim: an unfair or deceptive trade practice and public impact. The court turns to those elements.

A.    *Unfair or Deceptive Trade Practices*

"[T]he Colorado Supreme Court has noted that, at least with respect to Colo. Rev. Stat. § 6-1-105(e), a deceptive trade practice under the CCPA requires a *false statement of fact* that either induces the recipient to act or has the capacity to deceive the recipient." *Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1301-02 (10th Cir. 2022) (citing *Rhino Linings*, 62 P.3d at 144, 148) (cleaned up, emphasis in original). Therefore:

> Under Colorado law, misrepresentation is only actionable when it is made either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive the plaintiff. Thus, a party may establish a deceptive trade practice by proof that a defendant knowingly made a misrepresentation that induces a party's action or inaction.

*Id.* at 1302 (cleaned up, citing *Rhino Linings*, 62 P.3d at 147; *Parks v. Bucy*, 72 Colo. 414, 211 P. 638, 639 (1922)). Thus, "[m]isrepresentation caused by negligence or an honest mistake is a defense to a CCPA claim." *State ex rel. Coffman v. Robert J. Hopp & Assocs., LLC*, 442 P.3d 986, 1001 (Colo. App. 2018), *as modified* (Nov. 1, 2018) (citing *Crowe v. Tull*, 16 P.3d 196, 204 (Colo. 2006)).

"[I]n addition, the alleged representation of a fact must be material" to constitute an unfair or deceptive trade practice under the CCPA. *Renfro*, 25 F.4th at 1302. "[T]he CCPA does not, as a matter of law, make actionable a statement which would otherwise be mere puffery." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009) (quoting *Park Rise Homeowners*

*Ass'n, Inc. v. Resource Const. Co.,* 155 P.3d 427, 435 (Colo. App. 2006)). "[T]he term 'puffery' is used to 'characterize those vague generalities that no reasonable person would rely on as assertions of particular facts.' These kinds of statements cannot form the basis for any claim of misrepresentation of fact." *Renfro*, 25 F.4th at 1302 (cleaned up, quoting *Alpine Bank*, 555 F.3d at 1106).

Here, Plaintiff alleges that Clorox knowingly or recklessly made four false statements:

(1) Clorox "falsely labeled and marketed [the Product] to kill harmful bacteria, when, in fact, the Product that Plaintiff bought actually contained the harmful bacteria, *Pseudomonas aeruginosa*." Complt. ¶ 60;

(2) Clorox claimed that "the Product was safe to use on surfaces in the home," in particular on the types of "hard, nonporous surfaces" identified in a screen shot on one of Defendant's webpages. *Id*. ¶ 61(a);

(3) Clorox claimed that "the Product was a 'Versatile and Economic [sic] Cleaner' meant to disinfect home surfaces." *Id*. ¶ 61(b); and

(4) Clorox claimed that "the Product did not contain *Pseudomonas aeruginosa*." *Id*. ¶ 61(c).

Clorox argues that these allegations are respectively (1) conclusory, (2) not an actionable false representation, (3) both conclusory and not an actionable false representation, and (4) conclusory. *See* Motion at 8-12. It asserts that without more specific allegations of where and when Defendant made the alleged false claims—such as pointing to specific text or images in a product label or on a specific Clorox webpage—these allegations are conclusory. Clorox further argues that, to the extent Plaintiff does allege specific examples—that the Product was safe to

use on surfaces in the home and that the Product was a versatile and economical cleaner—those statements are not false.

In response, Plaintiff addresses the first alleged false statement directly, but she distills her rejoinder concerning the second, third, and fourth false statements to a single assertion: that Clorox knowingly or recklessly marketed and labeled the Product as representing that it "contained ingredients that have the ability to clean and disinfect a consumer's home when it actually contained an ingredient that was not on its label and [was] extremely dangerous to consumers, *pseudomonas aeruginosa*." Resp. at 5.[6] In reply, Clorox argues that Plaintiff simply recites the "same conclusory allegation[s]" as in the Complaint and does not address Clorox's arguments. Reply at 2-5.

The court proceeds to address the four alleged false statements separately.

      *1.*     *Statement that the Product Kills Bacteria*

Plaintiff's allegation that Clorox falsely labeled or marketed the Product to "kill harmful bacteria," Complt. ¶ 60, is conclusory. Regardless of whether the court applies the Rule 9(b) "with particularity" standard or the more lenient standard of Rule 8 notice pleading, Plaintiff's pleading fails on this score.

The Complaint does not point to specific text or images in any labeling or marketing of the Product (online or otherwise) in which Clorox claimed that the Product would kill bacteria.

---

[6] In its Reply, Defendant contends that Plaintiff waived any arguments about the second, third, and fourth false statements because she did not specifically address them in her Response. *See* Reply at 3-5. The court disagrees, and finds that the Response does effectively encompass those points. In addition, Plaintiff's counsel discussed these allegations at oral argument, affording Defendant's counsel an opportunity to respond.

To state a viable claim under the CCPA, Plaintiff must allege at least some specific instances, during the timeframe in which she purchased and used the Product, in which Clorox's marketing, advertising, or labeling falsely or recklessly represented that the Product kills bacteria. *Cf. Goode*, 2024 WL 3849756, at *12 (recommending dismissal of CCPA claim because it did not allege the required "time, place and contents of the false representation"); *Warner Recs. Inc. v. Charter Commc'ns, Inc.*, No. 19-cv-00874-RBJ-MEH, 2020 WL 6511988, at *3 (D. Colo. Nov. 5, 2020) (dismissing CCPA counterclaim where the conclusory allegation that the plaintiff had "knowingly or recklessly" sent copyright infringement notices was "not supported by any allegation of facts," and therefore did "not come close to satisfying the particularity required for allegations of fraud").

The references in the Complaint to addresses of Clorox webpages—unaccompanied by any dated excerpts—also do not suffice to allege fraud with particularity. These unadorned references do not allow the court reasonably to infer that the webpages displayed a false statement at the time Plaintiff bought or used the Product. And the Complaint also makes no reference to the core fact on which Plaintiff's arguments in the Response and at oral argument hinged: that Clorox marketed and advertised the Product on its website as one of a "family" of cleaners and disinfectants, thus falsely suggesting that the Product shared the bacteria-killing properties of the original Pine-Sol disinfectant.

In short, Plaintiff pleads no facts to support her conclusory allegation that Clorox "falsely labeled and marketed" the Product "to kill harmful bacteria," Complt. ¶ 60, and so fails to plausibly allege an unfair or deceptive trade practice on that basis.

2.      *Statement that the Product was Safe for Surfaces*

Likewise does Plaintiff fail to allege that Clorox's statement that "the Product was safe to use on surfaces in the home," Complt. ¶ 61(a), constitutes an actionable misrepresentation of fact, or plausibly support that Clorox made that statement with knowledge of its untruth or in a reckless or willful manner.

In the Complaint, Plaintiff includes a screen shot from a Clorox website identifying surfaces on which it was safe to use the "Pine-Sol cleaners": "hard, nonporous surfaces, including floors, sinks, counters, stoves, bathtubs, shower stalls, tile and more!" Complt. at 6 (after ¶ 61(a)). Clorox argues that this statement obviously refers to the safety of *surface materials*, not to the safety of people who come into contact with the Product. Motion at 9-10. In essence, Clorox asserts that no reasonable person would construe the statement that the Product was "safe on your surfaces" as purporting to make a factual representation about the safety of the *people* who use the Product.

At oral argument, Plaintiff's counsel took a contrary view, arguing that this marketing implies that the Product is safe for the people who come into contact with the household surfaces where the Product is used. That stretches the bounds of logic, but if that is the allegedly false statement, Plaintiff's contention that Clorox knew that it was untrue, or acted recklessly and willfully with regard to its consequences, is wholly conclusory. She alleges no facts plausibly demonstrating that Clorox had actual knowledge about the bacterial contamination of the Product in advance of its recall in October 2022, or that Clorox acted recklessly in failing to acquire that knowledge. To be sure, Plaintiff asserts that Clorox received reports of other purchasers falling ill after using the Product, but that allegation is similarly lacking in supporting facts: she does not

20

allege when Clorox received those reports, what information those reports conveyed, or how many reports there were and where they originated. And even if the court might be able to infer from the existing allegations that Clorox was negligent in failing to acquire information about the bacterial contamination sooner, a false statement caused by negligence or an honest mistake is not actionable under the CCPA. As the Colorado Supreme Court has made clear, "[t]he CCPA does not create liability for those who intend to live up to the pronouncements of their advertisements, but are negligent in action despite those intentions." *Crowe*, 126 P.3d at 204.

Thus, with regard to the "safe to use on surfaces" statement, Plaintiff has failed to plead facts allowing this court to infer that the statement was either a false representation of fact or made with knowledge of its untruth, or with reckless and willful disregard of the consequences of making the statement. Plaintiff's factual allegations on this point therefore do not suffice to plausibly plead that Clorox engaged in an unfair or deceptive trade practice.

> 3. *Statement that the Product Was a "Versatile and Economical Cleaner"*

Plaintiff similarly fails to plausibly allege that Clorox made a knowing, or reckless or willful, misrepresentation by stating on one version of the Product label that it was a "versatile and economical cleaner." Complt. ¶ 61(c) (screenshot of label). At most, this statement plausibly indicates nothing more than "puffery"—a "vague generality that no reasonable person would rely on as an assertion of a particular fact" that "cannot form the basis for any claim of misrepresentation of fact." *See Renfro*, 25 F.4th at 1302 (cleaned up). Neither do any well-pleaded facts support Plaintiff's intellectual leap from this vague and general statement to the conclusion that Clorox affirmatively represented that the Product was "*meant to disinfect* home surfaces. *Id.* ¶ 61(b) (emphasis added). Put simply, Plaintiff pleads no facts to support this

conclusory contention, particularly where the label itself makes no mention of the Product being a "disinfectant."

To sum up, Plaintiff has not alleged that a label pitching the Product as a "versatile and economical cleaner" plausibly shows that Clorox knowingly, or with reckless and willful disregard of the consequences of its statement, made a false representation. Her unsupported assertion does not satisfy the unfair or deceptive trade practice element of a CCPA claim.

4.    *Statement that the Product Did Not Contain Bacteria*

Finally, as to the allegation that "*Defendant claims* that . . . the Product did not contain *Pseudomonas aeruginosa*, Complt. ¶¶ 61 and 61(c) (emphasis added), Plaintiff pleads no facts plausibly indicating that Clorox ever made such a claim. She points to no specific product labels, webpages, or marketing or advertising materials in which Clorox represented that the Product was known to be free of *Pseudomonas aeruginosa* or any other bacteria. Nor do the well-pleaded facts allow this court to infer that Clorox knew about the presence of bacteria in the Product before the recall, or acted with reckless and willful disregard of the potential for the Product to contain bacteria.

In conclusion, Plaintiff has not alleged that Clorox knowingly or recklessly made a false statement—with respect to averments about bacteria or on any other basis. She therefore has failed to plausibly allege an unfair or deceptive trade practice as required to state a CCPA claim.

B.    *Public Impact*

Because Plaintiff has failed to allege that Clorox made any false representations in its product labels or marketing materials, she also has not alleged facts sufficient to plausibly establish the public impact element of a CCPA claim.

Colorado courts have made clear that, "in the context of a CCPA claim, even mass advertising cannot be considered to create a public impact *unless it contains misrepresentations or deceptive information.*" *Gen. Steel Domestic Sales, LLC v. Hogan & Hartson, LLP*, 230 P.3d 1275, 1279-80 (Colo. App. 2010) (finding that there was no public impact where a franchisor's widespread public advertising "indicate[d] only that dealerships are available in selected areas" and contained "no deception" or information that was "disingenuous about the nature or exclusivity of dealership territories) (emphasis added) (citing *Rhino Linings*, 62 P.3d at 150). Here, for the reasons articulated above, Plaintiff has not alleged that Clorox's material contains "misrepresentation or deceptive information," requiring dismissal of her CCPA for this additional reason.

### C.    Leave to Amend

In lieu of dismissal of her CCPA claim, Plaintiff requests that she be allowed to amend her Complaint. Resp. at 9. This court is unpersuaded by Clorox's contention that the pleading deficiencies with regard to the CCPA claim cannot be cured, *see* Reply at 9, and discerns no basis at this juncture for finding that amendment would be futile. *Cf. Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."). If the instant Motion is ultimately granted, the court therefore additionally recommends that Plaintiff be granted leave to promptly file a motion for leave to amend the complaint to attempt to plead a viable CCPA claim.

### IV.    Conclusion

For the foregoing reasons, this court respectfully **RECOMMENDS** that Defendant's

Partial Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6), ECF No. 11, be **granted** and that

Plaintiff's claim under the Colorado Consumer Protection Act be **dismissed without prejudice**.[7]

DATED: February 11, 2025                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[7] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").