## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01917-RMR-SBP

GLORIA WERTZ,

      Plaintiff,

v.

CLOROX SERVICES COMPANY,

      Defendant.

---

## ORDER DENYING MOTION FOR SPOLIATION SANCTIONS

**Susan Prose, United States Magistrate Judge**

      This matter is before the court on Defendant Clorox Services Company's Motion for Sanctions for Spoliation of Evidence (ECF No. 57) ("Motion" or "Spoliation Motion"), after it was referred to this court, ECF No. 58. Plaintiff Gloria Wertz responded (ECF No. 64), and Defendant filed a reply (ECF No. 65). Having carefully considered the briefing on the Motion, the entire docket, the applicable law, and the parties' respective positions articulated at the oral argument on October 13, 2025 (*see* ECF No. 69), the court respectfully **ORDERS** that the Motion is **denied**.[1]

---

[1] Because the denial of the Spoliation Motion is nondispositive under Federal Rule of Civil Procedure 72(a), the court proceeds by order. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519–1520 (10th Cir. 1995) ("Even though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction the order falls under Rule 72(a) rather than Rule 72(b).").

# BACKGROUND

## I.    Plaintiff's Use of the Recalled Product and Diagnoses with Various Lung Disorders

Defendant manufactures cleaning products marketed under the name "Pine-Sol."

Amended Complaint, ECF No. 42 ¶ 3.[2] One of the products in the "family" of Pine-Sol products

is "Pine-Sol Lavender." *Id.* ¶¶ 4-5; *id.* ¶ 38 (image depicting the "Pine-Sol Family," including the

lavender-scented version). Plaintiff, who resides in Colorado, purchased two bottles of Pine-Sol

Lavender: the first at a King Soopers store on October 4, 2021, and the second at a Walmart store

on September 3, 2022. *Id.* ¶ 6 n.7. The court will refer to Plaintiff's purchases of Pine-Sol

Lavender as the "Product."

Sometime between December 2021 and January 2022, Plaintiff—who is over the age of

65 and has asthma—started using the Product. *Id.* ¶¶ 11, 23. Very shortly after that, in February

2022, Plaintiff experienced an onset of what she describes as "unusual symptoms, including but

[not] limited to: shortness of breath, extreme fatigue, continuous productive cough, and leg

swelling." *Id.* ¶ 12. In March 2022, a physician diagnosed her with pneumonia. *Id.* ¶ 13. In April

2022, Plaintiff was examined by a pulmonologist, who determined that Plaintiff was infected

with a bacterium called *Pseudomonas aeruginosa*, which caused her pneumonia. *Id.* ¶ 14. The

---

[2] The court granted Defendant's partial motion to dismiss Plaintiff's original complaint, dismissing without prejudice Plaintiff's claim under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.* ("CCPA"). *See* ECF No. 36 (recommendation); ECF No. 38 (order adopting recommendation). Plaintiff then filed the Amended Complaint (ECF No. 42), which triggered another partial motion to dismiss the CCPA claim (ECF No. 46). This court's recommendation to grant the second motion to dismiss, *see* ECF No. 71, is pending. Regardless, the resolution of the spoliation question does not depend on the outcome of the second motion to dismiss. For purposes of its assessment of the spoliation question only, the court finds that the facts delineated here are non-conclusory and have been plausibly alleged.

next month, in May 2022, Plaintiff was diagnosed with bronchiectasis, which she describes as "a progressive condition which affects the lungs." *Id.* ¶ 20.[3] In the months that followed these diagnoses, "Plaintiff continued to use the Product, in an effort to keep her home clean and prevent others entering her home from becoming sick." *Id.* ¶ 16. Throughout the time Plaintiff used the Product, she suffered from recurrent pneumonia. *Id.* ¶ 17. She now suffers from permanent lung damage and has been advised that she may require a lung transplant, consequences she attributes to the injuries she sustained because of her exposure to *Pseudomonas aeruginosa. Id.* ¶¶ 25, 27.

Defendant has acknowledged that some Pine-Sol Lavender produced during the period when Plaintiff purchased the Product may have contained *Pseudomonas aeruginosa*, the same bacterium Plaintiff alleges caused her illness. On October 25, 2022, as reflected on the website of the United States Consumer Product Safety Commission ("CPSC"), Defendant recalled a group of multi-surface cleaners "due to risk of exposure to bacteria":

> **Name of Product:**
> Pine-Sol® Scented Multi-Surface Cleaners in **Lavender Clean®**, Sparkling Wave®, and Lemon Fresh scents, CloroxPro® Pine-Sol® All Purpose Cleaners, in **Lavender Clean®,** Sparkling Wave®, Lemon Fresh, and Orange Energy® scents, and Clorox® Professional™ Pine-Sol® Lemon Fresh Cleaners. Original Pine-Sol® (Pine scent) is not included in this recall.

---

[3] The court takes judicial notice of the description of bronchiectasis on the website of the National Heart, Lung, and Blood Institute, a component of the National Institutes of Health, as an incurable "condition that occurs when the tubes that carry air in and out of your lungs get damaged, causing them to widen and become loose and scarred. These tubes are called airways. Although the cause of bronchiectasis is unknown, bronchiectasis usually results from an infection or other condition that injures the walls of your airways or keeps the airways from clearing the mucus they make." *See* Bronchiectasis - What Is Bronchiectasis? | NHLBI, NIH, last visited February 14, 2026; *see also, e.g., Sierra Club v. U.S. Env't Prot. Agency*, 964 F.3d 882, 893 (10th Cir. 2020) (taking judicial notice of information on government website).

**Hazard:**

**The recalled products may contain bacteria, including *Pseudomonas aeruginosa***, an environmental organism found widely in soil and water. People with weakened immune systems or external medical devices who are exposed to *Pseudomonas aeruginosa* face a risk of serious infection that may require medical treatment. The bacteria can enter the body if inhaled, through the eyes, or through a break in the skin. People with healthy immune systems are usually not affected by the bacteria.

**Remedy:**
Refund

**Recall Date:**
October 25, 2022

**Units:**
To date, testing has identified bacteria in certain recalled products, **including those produced between January 2021 and September 2022**. Clorox produced approximately 37 million recalled products in that period.

*See* Clorox® Recalls Pine-Sol® Scented Multi-Surface Cleaners, CloroxPro® Pine-Sol® All Purpose Cleaners, and Clorox® Professional™ Pine-Sol® Lemon Fresh Cleaners Due to Risk of Exposure to Bacteria | CPSC.gov (emphasis added), last visited February 14, 2026. Under "Recall Details," the CPSC website proceeds to inform the consumer of this under the "Remedy" subheading:

Consumers should immediately stop using Pine-Sol Scented Multi-Surface Cleaners in Lavender Clean, Sparkling Wave, and Lemon Fresh scents, CloroxPro Pine-Sol All Purpose Cleaners, in Lavender Clean, Sparkling Wave, Lemon Fresh, and Orange Energy scents, and Clorox Professional Pine-Sol Lemon Fresh Cleaners that have date codes printed on the bottle beginning with "A4" and the first five digits numbered less than 22249, which represents products produced prior to September 2022. Consumers should take pictures of the 12 digit UPC code and the date code, ***dispose of the product in its container with household trash***, and contact Pine-Sol for a full refund of the purchase price, with receipt, or of the

4

manufacturer's suggested retail price, without receipt.

*Id.* (emphasis added); *see also* ECF No. 11-1 at 28 (copy of October 25, 2022 recall notice

appended to Defendants' first motion to dismiss, downloaded 7/10/24 at 1:29 p.m.).

## II.    Alleged Spoliation by Plaintiff

When Plaintiff became aware of the recall in November 2022, she immediately stopped

using the Product. ECF No. 42 ¶ 24. She also did exactly what Defendant told her to do: she

discarded the unused portion of the product in its container with her other household trash. *See*

ECF No. 11-1 at 28. Therein lies the impetus for the Spoliation Motion.

Drilling down on the facts on which Defendant relies, Plaintiff testified in her deposition

that the October 25, 2022 recall came to her attention approximately one week later, on

November 1, 2022. On that date, a clerk who checked out her purchases gave her a computer-

generated recall notice—apparently triggered by her use of the same credit card or King Soopers

customer number with which she had purchased the Product—which advised that "consumers

who have products listed below should stop using immediately and contact Pine-Sol at

pinesolrecall.com for instructions to request a refund . . . . The recall is being initiated due to the

possibility that the product may have microbial contamination with bacteria including

Pseudomonas aeruginosa." ECF No. 57-2 at 2. Plaintiff immediately recognized the name of the

bacteria with which she was infected and attributed her use of the Product to that infection.

Wertz Deposition Tr., ECF No. 64-1 at 154:14-155:4 (testimony that Plaintiff "was convinced"

that the Product had caused her infection).

After receiving the recall notice, Plaintiff took immediate action:

I went home, took a picture of the proof of purchase, not knowing about – you

> wanted another whatever off the bottle. At that point I just want to get it out of my
> house, honestly.
> . . .
> I'm like grateful that I was the only that really was sick. Anyway, I took a picture
> of the bottle, and then I made sure that the thing was on tight. Threw it out. Threw
> out my mop. Threw out anything that I'd cleaned with that in the dumpster.

*Id.* at 157:18-158:2. In response to questioning from Defendant's counsel as to whether, on

November 1, 2022, Plaintiff thought she would "be contacting the company to get some kind of

compensation, maybe eventually make a claim," *id.* at 159:16-19, Plaintiff responded:

> I was mainly shocked and wanted to get it out of my house. That was the main thing
> I remember thinking. I've got to get this away from me, away from my home, you
> know. And I think I even put it in an extra – double-bagged it before I threw it
> away.
>
> And I don't remember thinking that right away. That probably came to me within
> maybe 24 hours after the shock that this product could actually have that in it –

*Id.* at 159:23-160:6. When counsel asked Plaintiff if she attempted to retrieve the bottle from the

dumpster, Plaintiff admitted that she did not:

> I wish I did, but I didn't. **I didn't know that I was going to sue anybody.**

*Id.* at 162:1-2 (emphasis added); *id.* at 162:17-19 ("At the time, truly all I was thinking was I've

got to get this away from me and my family."). Per Plaintiff's testimony, the idea that the bottle

might be needed for testing at some point in the future did not cross her mind:

> I – it never occurred to me to have it tested. I – when I saw pseudomonas and I had
> pseudomonas, I'm like this is it.
> . . .
> The "may" just didn't even occur to me. It was like I've got a bottle with this in it,
> unfortunately.

*Id.* at 162:21-163:2.

### III.    Spoliation Motion

Based on these events, Defendant contends in the Spoliation Motion that Plaintiff must be sanctioned because she did not retain the bottle. Defendant asserts that *Pseudomonas aeruginosa* was only present "in a select number of bottles," and with the Product at issue here long discarded, Defendant has lost "the opportunity to inspect or test that bottle." ECF No. 57 at 2. This, Defendant claims, amounts to "[p]rejudice of [a] magnitude that cannot go unanswered." *Id.* As a sanction for the alleged spoliation, Defendant asks the court to exclude all testimony "regarding the appearance of the discarded Pine-Sol bottle—which Plaintiff claims appeared cloudy—an aesthetic trait that can be relevant to the potential presence of *Pseudomonas aeruginosa*." *Id.*; *see also id.* at 15 (asserting the "[p]recluding testimony related to the appearance of the Pine-Sol bottle would thus 'balance the prejudice caused by spoliation'") (quoting *Connell Solera, LLC v. Lubrizol Advanced Materials, Inc.*, No. 21-cv-00336-NYW-SKC, 2023 WL 2187481, at *8 (D. Colo. Feb. 23, 2023)).

For her part, Plaintiff asserts that litigation was neither imminent nor reasonably foreseeable when she threw away the bottle, and that Defendant cannot demonstrate prejudice from not having access to the bottle now. ECF No. 64 at 7-9. Plaintiff notes that it is her burden to show that bacteria was present in the product, and that any prejudice from the lack of testing of the Product therefore redounds more to Defendant's benefit than to hers. *Id.* at 8 (arguing that "without specific testing of Ms. Wertz's bottle, Defendant is now free to argue to a jury that bottle was not tested so Plaintiff cannot conclusively establish that [*Pseudomonas aeruginosa*] was present in the Product").

For the reasons that follow, the court is unconvinced that the discarding of the bottle by

an unsophisticated litigant in the immediate aftermath of discovering that it might contain the

very bacteria that doctors had told her had been making her sick for some nine months—notably,

discarding being the precise action that Defendant had directed purchasers of its potentially

contaminated products to take—was intentional or done in bad faith. Furthermore, the court

respectfully finds that Defendant has failed to prove that it has sustained any actual prejudice by

the loss of this evidence. On this record, no spoliation sanction is warranted.

## ANALYSIS

### I.     Legal Principles

"Spoliation is "the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

*Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007)

(quotation omitted). A party who despoils evidence may be subject to sanctions pursuant to the

court's inherent authority. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991) ("[T]he

inherent power of a court can be invoked even if procedural rules exist which sanction the same

conduct.").

To obtain sanctions for spoliation of evidence, a movant must show "(1) a party ha[d] a

duty to preserve evidence because it knew, or should have known, that litigation was imminent,

and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington*

*Northern & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citing *103*

*Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006)). Sanctions may be

imposed even where evidence was destroyed due to mere negligence, so long as the aggrieved

party can show it suffered prejudice and the spoliator was on notice that the evidence should be

preserved, *see United States ex rel. Baker v. Community Health Systems, Inc.*, No. CIV. 05-279
WJ-ACT, 2012 WL 12294413 at *3 (D.N.M. Aug. 31, 2012), *objections overruled*, 2012 WL
5387069 (D.N.M. Oct. 3, 2012), but only proof of bad faith will support an adverse inference
instruction: "[m]ere negligence in losing or destroying records is not enough because it does not
support an inference of consciousness of a weak case." *Turner v. Public Services Co. of
Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Aramburu v. Boeing Co.*, 112 F.3d
1398, 1407 (10th Cir. 1997)).

Defendant, as the moving party, has the burden to prove by a preponderance of the
evidence that Plaintiff failed to preserve evidence or destroyed it. *Zbylski v. Douglas Cnty. Sch.
Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015) (citation omitted). Because spoliation occurs
on "a continuum of fault—ranging from innocence through the degrees of negligence to
intentionality," *Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1297 (D.N.M. 2016)
(quotation omitted), district courts have "'substantial weaponry' in their arsenal to shape the
appropriate relief for a party's spoliation of evidence." *Helget v. City of Hays*, 844 F.3d 1216,
1225-26 (10th Cir. 2017) (quoting *Turner*, 563 F.3d at 1149). "Among the options, a court may
strike witnesses; issue an adverse inference; exclude evidence, or, in extreme circumstances,
dismiss a party's claims." *Id.* at 1226 (internal citations omitted). "[W]here—as here—"an
adverse inference instruction is neither requested nor appropriate, the Tenth Circuit has held that
a finding of bad faith is not required to impose nondispositive sanctions, such as excluding
evidence." *Oto Software, Inc. v. Highwall Techs., LLC*, No. 08-CV-01897-PAB-CBS, 2010 WL
3842434, at *12 (D. Colo. Aug. 6, 2010), *report and recommendation adopted*, 2010 WL
3842430 (D. Colo. Sept. 27, 2010) (citing *103 Investors I*, 470 F.3d at 988-89).

When deciding the appropriate sanction for spoliation, "courts have considered a variety of factors, two of which generally carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party." *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912, 1998 WL 68879, at *4 (10th Cir. 1998) (unpublished) (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)). The court is guided by the overarching principle that it "should impose the least onerous sanction that will remedy the prejudice and, where applicable, punish the past wrongdoing and deter future wrongdoing." *Sours v. Glanz*, 24 F. App'x 912, 915 (10th Cir. 2001).

Applying these legal principles to the facts here, the court respectfully finds that Defendant has failed to meet its burden to establish its entitlement to a spoliation sanction.

## II.    Application

### A.  Duty to Preserve

The court first must address whether Plaintiff had a duty to preserve the Product bottle on November 1, 2022—the day she learned of the recall—because she knew, or should have known, that litigation was "imminent." *Burlington Northern*, 505 F.3d at 1032.

To commence with the relevant factual context, Plaintiff has credibly testified that litigation was not on her mind when she threw away the bottle—on November 1, 2022, she avers, "I didn't know that I was going to sue anybody," Wertz Depo. at 162:1-2—and her detailed description of what happened on the day the Product went into the dumpster bolsters that testimony. From the record before the court a picture emerges of a then-67-year-old individual engaged in a months-long journey to ascertain the origin of sudden-onset symptoms

followed by repeated bouts of pneumonia. Am. Compl. ¶¶ 12–17; *see also* ECF No. 70-1 at 204:9–19. Numerous medical examinations and treatments have marked her path, culminating in a finding that she has a bacterial infection. Am. Compl. ¶¶ 14–15; Wertz Depo. at 154:14– 155:1:4. Shortly thereafter, she is diagnosed with bronchiectasis, a manageable but apparently incurable lung affliction. Am. Compl. ¶ 20. She learns that she may need a lung transplant. *Id.* ¶ 27. She has been, to use her words, "so freaking sick." Wertz Depo. at 156:3.

This framework illuminates the actions Plaintiff took on November 1, 2022, when she went to her local King Soopers to do her marketing. *Id.* at 155:20-156:1. Without warning, she learns in the checkout line that a product she has been using to keep her home clean is being recalled because it may contain the very same bacterium with which she is infected. *Id.* at 156:1-22. She attests that she is "shocked" and thinks only of getting out of her house what she is "convinced" is the source of her sickness. *Id.* at 155:4, 159:23-160:1-6. The idea that "*I've got to get this away from me*, away from my home," is at the forefront of her mind. *Id.* at 159:23-160:1 (emphasis added). And so she "made sure that the thing[4] was on tight," put the Product in not one but two bags, and threw it in a dumpster, along with the mop and "anything else that [she'd] cleaned with[.]"*Id.* at 157:18-158:2. Notably, Plaintiff's actions exactly comported with Defendant's own recall notice, which explicitly told the consumer to "***dispose of the product in its container with household trash***." ECF No. 11-1 at 28 (emphasis added).

On this record, Defendant's argument that litigation was imminent on November 1, 2022, when Plaintiff received notice of the recall and discarded the bottle, is not persuasive. Defendant grounds its position primarily on three features of Plaintiff's testimony: her anger toward the

---

[4] The court understands this to refer to the cap on the bottle.

company, her decision to photograph the proof of purchase, and her later contemplation that the
company should pay her medical bills. Wertz Depo. at 155:23–156:1; 157:18–21; 159:16–160:6.
When viewed in isolation, those facts might suggest dissatisfaction with a product. When viewed
in full context, however, they reflect the reactions of a lay consumer confronting a sudden
health-and-safety risk—not an objectively "imminent" or "reasonably foreseeable" lawsuit on
the horizon as of November 1, 2022. *See Burlington Northern*, 505 F.3d at 1032; *Cache La
Poudre Feeds*, 244 F.R.D. at 620.

 Plaintiff has testified unequivocally that litigation was not on her mind when she
discarded the bottle: "I wish I did, but I didn't [go back to the dumpster to retrieve the bottle]. I
didn't know that I was going to sue anybody." Wertz Depo. at 162:1–2; 162:17–19. That
testimony is corroborated by the contemporaneous circumstances reflected in the pleadings and
her deposition, which show that on November 1, 2022, Plaintiff was reacting in real time to
learning—in a grocery-store checkout line—that a household cleaning product she had been
using for months was being recalled due to possible bacterial contamination. Am. Compl. ¶¶ 21–
24; Wertz Depo. at 154:16–155:4.

 This record emphasizes that Plaintiff was not a corporate actor with institutional litigation
experience or familiarity with evidence-preservation obligations. At the outset of her deposition,
Plaintiff confirmed that she had never previously had her deposition taken and that the process
was "all kind of new" to her. ECF No. 70-1 at 5:8–11. Nothing in the record suggests that
Plaintiff had ever been involved in prior civil litigation, had experience with product-liability
claims, or had any understanding of litigation holds or preservation duties. The court therefore
evaluates her conduct through the lens of an individual consumer, rather than a sophisticated

corporate litigant, confronted with an unexpected recall warning. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (courts should be "sensitive to the party's sophistication with regard to litigation," particularly where "individual litigants" may be unfamiliar with preservation obligations)[5]; *see also, e.g.*, *Living Color Enter., Inc. v. New Era Aquaculture, Ltd.*, No. 14-cv-62216, 2016 WL 1105297 at *6 (S.D. Fla. Mar. 22, 2016) (in declining to apply a spoliation sanction where the defendant had merely acted negligently in failing to delete the auto-delete function on his cell phone, observing that "Defendant is an individual who appears to be a relatively unsophisticated litigant"); *State Farm Fire & Cas. Co. v. Steffen*, 948 F. Supp. 2d 434, 450 n.25 (E.D. Pa. 2013) (in rejecting a "vicarious spoliation" theory posited by an insurer, observing that "it appears undisputed that the concededly unsophisticated Steffens . . . knew little, if anything, about fire investigations and liability claims, were never told by State Farm or anyone else that they must preserve the fire scene or that *any* party was interested in inspecting the premises") (cleaned up); *Neverson-Young v. BlackRock, Inc.,* No. 09 Civ. 6716, 2011 WL 3585961, at *3-4 (S.D.N.Y. Aug. 11, 2011) (in rejecting "extreme sanctions such as dismissal or an adverse inference instruction," finding plaintiff who donated her laptop "merely negligent" based on the fact that "[i]n contrast to corporate actors . . . [plaintiff] is unsophisticated and unaccustomed to the preservation requirements of litigation");

Moreover, the timeline of events on November 1, 2022 is consistent with Plaintiff's focus on her immediate health and safety, not evidence preservation. Plaintiff learned of the recall from a clerk in a checkout line, immediately recognized the name of the bacterium with which she had

---

[5] Although Rule 37(e) does not govern loss of tangible evidence, the advisory committee's note underscores that courts should be sensitive to differences in litigant sophistication.

been infected, and went home that same day to remove the product from her environment. She testified that she took a photograph of the proof-of-purchase code, then "made sure that the thing was on tight," double-bagged the bottle, and discarded it—along with her mop and "anything else that [she'd] cleaned with"—in a dumpster. *Id*. at 157:18–158:2; 158:24-159:2. These actions occurred on the same day she learned of the recall and before she had any contact with legal counsel or contemplated some kind of litigation strategy.

Plaintiff further testified that on November 1, 2022 she was "convinced" the recalled product caused her infection, that she had "been so freaking sick," and that her emotional reaction progressed from shock, to anger, to relief at finally identifying a possible source of her recurring illness. *Id*. at 155:1–4; 155:23–156:3. Critically, her testimony makes clear that her overriding concern at that moment was removing what she believed to be a dangerous contaminant from her home: she was "mainly shocked and wanted to get it out of my house," and "the main thing" she remembered thinking was, "I've got to get this away from me, away from my home." *Id*. at 159:23–160:1. Such testimony is incompatible with an inference that Plaintiff was contemporaneously preserving—or intentionally destroying—evidence in anticipation of litigation.

Plaintiff's age and personal circumstances further contextualize her response and her lack of intentionality regarding the destruction of evidence. Plaintiff testified that was born in 1955; she therefore was 67 years old on November 1, 2022. ECF No. 70-1 at 26:18–23. At the time she discarded the bottle, Plaintiff had been dealing for months with serious pulmonary illnesses, including pneumonia and a bacterial infection, and had not yet had the benefit of legal advice. Am. Compl. ¶¶ 12–20. In these circumstances, the record overwhelmingly supports the

conclusion that her conduct was driven by concern for her health and safety, not by any intent to gain a litigation advantage.

In declining to find a duty to preserve, the court also accords significant weight to the recall instructions themselves. The recall notice directed consumers to take photographs of identifying codes and to "dispose of the product in its container with household trash." ECF No. 11-1 at 28. Plaintiff's testimony that she photographed the proof of purchase and immediately discarded the product is consistent with a consumer following those instructions as written to a tee. Wertz Depo. at 157:18–158:2. Where a manufacturer instructs consumers to dispose of a potentially contaminated product, it is particularly difficult to countenance the idea that an individual consumer who follows that instruction thereby acts with knowledge that litigation is imminent.

Plaintiff's decision to photograph the proof of purchase does not compel a different conclusion. On this record, that action is at least as consistent with documenting the recall and validating what she believed was the source of her prolonged illness—particularly for purposes of her medical care—as it is with operationalizing the litigation process. Plaintiff testified that she took the photograph "[t]o prove that I had bought it and that that was why I was sick," identifying her doctor and herself as the primary audience for that proof. Wertz Depo. at 158:7–19. She acknowledged that she later thought the company "should pay my medical bills," but clarified that this thought arose only after the initial shock had worn off—"within maybe 24 hours"—and that at the time of disposal she did not know she was going to sue anybody and that testing the bottle "never occurred" to her. *Id*. at 159:16–160:6; 162:17–19; 162:21–163:2. A fleeting belief that a company should pay medical expenses, without any contemporaneous steps

toward retaining counsel, issuing a demand, or initiating a claim, does not render litigation "imminent" as a matter of law. *See Burlington Northern*. 505 F.3d at 1032.

Viewed holistically, the record reflects a lay consumer responding to a shocking recall notice and prioritizing her health and safety in accordance with the manufacturer's own disposal instructions. Defendant has therefore not established by a preponderance of the evidence that Plaintiff knew, or should have known, that litigation was imminent at the moment she discarded the bottle. *Burlington Northern*, 505 F.3d at 1032; *Zbylski*, 154 F. Supp. 3d at 1160. Accordingly, the court is unpersuaded that Plaintiff had a duty to preserve the Product on November 1, 2022 sufficient to support a spoliation sanction.

### B. Culpability/Bad Faith

This finding disposes of the spoliation question, but even assuming that a duty to preserve the Product had arisen on November 1, 2022, the court finds no basis on this record to attribute bad faith to Plaintiff's decision to discard a consumer cleaning product upon learning that it might contain the very bacterium that had caused her months-long illness. *See Turner*, 563 F.3d at 1149. While Defendant does not seek an adverse-inference instruction, but instead requests an evidentiary sanction excluding testimony regarding the appearance of the bottle, ECF No. 57 at 15, the degree of Plaintiff's culpability nevertheless remains a critical consideration in determining whether any sanction is warranted and, if so, whether it is proportionate. *Jordan F. Miller Corp.*, 139 F.3d 912, 1998 WL 68879, at *4 . The court finds no culpability on the part of Plaintiff here.

Plaintiff's deposition testimony undermines any inference that she intentionally destroyed evidence to gain a litigation advantage. Plaintiff testified that she had never previously been

deposed and that the litigation process was "all kind of new" to her, reflecting an individual consumer unfamiliar with litigation and preservation obligations rather than a sophisticated actor managing evidence with strategic intent. ECF No. 70-1 at 5:8-11; 26:11–15. Her testimony regarding the disposal of the Product reflects confusion and regret informed by hindsight, not calculated destruction. When asked whether she attempted to retrieve the bottle from the dumpster, Plaintiff stated: "I wish I did, but I didn't. I didn't know that I was going to sue anybody." *Id*. at 162:1–2; 162:17–19. She further explained that the idea of preserving the bottle for testing "never occurred" to her at the time. *Id*. at 162:21–163:2.

The court does not find that these ordinary human reactions—shock at learning of a biohazard recall, anger at having been "so freaking sick," relief at identifying a possible source of prolonged illness, and later thinking that the company should pay medical bills—transform Plaintiff's conduct into intentional spoliation. Those reactions are consistent with a health-driven response by a lay consumer who believed she was removing a dangerous contaminant from her home, not with a purpose effort to deprive Defendant of relevant evidence.

Importantly, Plaintiff's actions were also consistent with Defendant's own recall instructions, which directed consumers to photograph identifying codes and to "dispose of the product in its container with household trash." ECF No. 11-1 at 28. Plaintiff testified that she followed those instructions by taking a photograph and discarding the bottle (and the cleaning tools that had come into contact with the Product) in a dumpster. Wertz Depo. at 157:18–158:2. Compliance with a manufacturer's disposal directive weighs heavily against any inference of culpability or bad faith, particularly where the product is believed to pose an ongoing health risk.

In short, even if Plaintiff should have preserved the Product—which the court does not

find—her conduct at most reflects negligence or lack of foresight, not intentional or bad-faith

destruction of evidence. Under controlling Tenth Circuit precedent, such circumstances do not

justify spoliation sanctions predicated on culpable intent. *See Turner*, 563 F.3d at 1149; *Helget*,

844 F.3d at 1225–26. Accordingly, the court finds that the culpability factor weighs strongly

against the imposition of any sanction.

### C.  Prejudice and Proportionality of Requested Sanction

The second element required to find spoliation is prejudice: Defendant must demonstrate

that it is actually prejudiced by the destruction of the evidence. *Burlington Northern*, 505 F.3d at

1032. Defendant contends that it has been prejudiced because it was deprived of the opportunity

to test the specific bottle Plaintiff discarded and that such testing could have been dispositive.

ECF No. 57 at 1–2, 15. The court does not minimize the practical value of being able to test the

specific bottle. On this record, however, Defendant has not shown prejudice of a kind or

magnitude that warrants the exclusionary sanction it seeks.

First, the absence of testing does not deprive Defendant of defenses; rather, it creates an

evidentiary dispute that can be addressed through discovery, expert testimony, and cross-

examination. As Plaintiff emphasizes, Defendant remains free to argue that Plaintiff cannot

conclusively prove the recalled bottle contained Pseudomonas aeruginosa because it was not

preserved for testing. *See* ECF No. 64 at 8. Plaintiff bears the burden of proof on defect and

causation, and the lack of testing may impair her ability to meet that burden at least as much as it

affects Defendant's ability to rebut those points. In this sense, the evidentiary gap created by the

absence of the bottle does not uniquely or unfairly disadvantage Defendant.

Second, the specific sanction Defendant requests—excluding testimony about the

appearance of the bottle, including its alleged cloudiness—has not been shown to be a
proportionate remedy for the prejudice claimed. Defendant's core prejudice theory is its inability
to conduct microbiological testing of the bottle's contents. ECF No. 57 at 1–2, 15. But excluding
lay testimony about appearance does not restore the opportunity for such testing, nor does it
meaningfully mitigate the asserted prejudice. Defendant thus has not demonstrated that
testimony regarding cloudiness is so central to Plaintiff's case that its exclusion would "balance
the prejudice caused by spoliation." *See id*. at 15. To the contrary, Defendant can challenge any
"appearance" testimony through cross-examination, impeachment with the recall language
(which stated the products may be contaminated), and expert testimony regarding whether and
how cloudiness correlates, or does not correlate, with bacterial contamination.

Third, the court considers the principle that it "should impose the least onerous sanction
that will remedy the prejudice." *Jordan F. Miller Corp.*, 1998 WL 68879, at *6. On this record—
where Plaintiff discarded the product immediately after learning of a contamination recall and
did so in a manner consistent with Defendant's express disposal instruction—Defendant has
failed to demonstrate prejudice requiring an exclusionary sanction. *See* ECF No. 11-1 at 28
(directing consumers to "dispose of the product in its container with household trash").

Finally, the proportionality inquiry must be informed by the nature of Plaintiff's conduct
and the availability of alternative, less severe means to address any claimed prejudice. Here,
Defendant retains access to recall-related testing data, its own manufacturing and quality-control
information, and the ability to present expert testimony regarding contamination rates, product
appearance, and causation. Defendant also remains free to emphasize to the jury that the specific
bottle was *not* tested and to argue that this evidentiary deficiency is due to Plaintiff's actions and

undermines her proof. These tools are sufficient to address any evidentiary disadvantage Defendant may claim to have without resorting to exclusion of testimony.

For these reasons, even if the court were to assume that a duty to preserve arose on November 1, 2022, the court would still find that Defendant has not met its burden to establish prejudice warranting the requested evidentiary sanction.

## CONCLUSION

Defendant, as the moving party, has not established by a preponderance of the evidence that Plaintiff had a duty to preserve the Product bottle on November 1, 2022, because litigation was imminent, nor has Defendant sufficiently demonstrated Plaintiff's culpability or actual prejudice to itself warranting the requested evidentiary sanction. Accordingly, Defendant Clorox Services Company's Motion for Sanctions for Spoliation of Evidence (ECF No. 57) is respectfully **DENIED**.[6]

---

[6] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").

DATED: February 16, 2026                    BY THE COURT:

_____

Susan Prose
United States Magistrate Judge